JONES *v.* HICKSON.

In Banc. Nov. 22, 1948.

(37 So. (2d) 625)

Ellis B. Cooper and M. W. Boyd, for appellant.

M. J. Peterson and **T. W. Davis, Jr.,** for appellee.

**Smith, J.**

The appellee filed his original bill in the Chancery Court of the Second Judicial District of Jones County, praying that appellant be required specifically to perform the following contract to convey land, viz.: "This is to certify I C. H. Jones agrees to sell to Bob Hickson 120 acres of land the Old Hatcher Place for $2500.00, $150.00 cash and $100.00 each year until paid for at 2% Ints. Agree to give him deeds as soon as I can get H. H. Mitchell to make deed. C. H. Jones, DDS, 11/14/42."

The original bill charged full compliance by appellee with the requirements of the agreement, and was accompanied by payment into court of the full amount of the balance of the purchase money. It also averred that, although requested to do so, appellant had refused to make the conveyance as he was obligated to do. The bill also stated that appellant had never called on H. H. Mitchell

to prepare the deed, Mr. Mitchell being the usual and customary scrivener of deeds in the community.

Appellant answered, which was made a cross-bill, and which also contained a general demurrer on the grounds that "The alleged contract attached as Exhibit 'A' is unenforceable because of the statute of frauds in that the location of the land and the description thereof do not appear from said contract . . . The complainant can have no relief for the reason that said Exhibit 'A' to the bill of complainant is not such a promise or agreement or memorandum or note thereof as satisfies the requirements of the Statute of frauds."

This demurrer was overruled, and an interlocutory appeal was granted to settle all the general controlling principles of the cause, and to save expense and delay. We have retained the appeal because of some apparent confusion in the opinions of the court, and because expense and delay will be avoided by decision of the issue on this appeal. The overruling of the demurrer is the only assignment of error, and forms the only question before us.

The arguments of appellant, which we deem worthy of notice, are two: (1) That the term "Old Hatcher Place" is an insufficient description to meet the requirements of the statute of frauds; (2) and that appellee must fail in his prayer for a warranty deed, at all events, since the agreement contains no express agreement therefor.

The applicable part of the statute of frauds provides that no action shall be brought whereby to charge a defendant or other party "upon any contract for the sale of lands, tenements, or hereditaments, . . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized in writing." Code 1942, Section 264.

The only description of the land agreed to be conveyed is "120 acres of land the Old Hatcher Place," without giving the district, county and state, which, appellant contends makes the agreement void and unenforceable. The appellee, on the other hand, takes the position that extrinsic evidence is competent to delineate the boundaries and location of the "Old Hatcher Place." The chancellor, as stated supra, agreed with appellee, and overruled the demurrer.

Appellant cites the recent case of Culpepper v. Chain, Miss., 32 So. (2d) 266, not yet reported in State Reports, which involved a receipt for money with reference to the sale and purchase of land, and which was sought to be made operative as a deed. The effect of the opinion was a denial that extrinsic evidence could be adduced for that purpose. The case was correctly decided, but is not in point on the entirely different issue in the case at bar.

Our attention is also called to the case of Paine v. Mikell, 187 Miss. 125, 192 So. 15, 16, where the Supreme Court held that a receipt for a down payment on purchase price of lots was insufficient under the statute of frauds as a memorandum of contract of sale, in the absence of statement therein as to the county and state in which the lots were located or of indication that it was made on behalf of the owner of the lots. However, the opinion of the Court there indicated the difference between that case and the instant case, where it said: "The appeal was perfected within the time required by law after the date of the final decree awarding the damages aforesaid, and so as to entitle the appellant to have the question determined by this court as to whether or not the original decree was properly rendered against her upon the bill of complaint, decree pro confesso and proof offered at the original hearing . . ." The Court said further that: "It is contended, however, that since the appellant did not appear and plead the statute, Section 3343, supra, the point cannot be raised here on appeal." It will be noted here that no effort to offer extrinsic evidence of

the state and county appears to have been made in the trial court, for the purpose of making the location of the lots more certain as to state and county, and hence the case is not in conflict with the conclusion we have reached in the instant case.

In the case at bar, ■■ ■ the original bill, by proper averment, defines the 120 acres comprising the Old Hatcher Place by metes and bounds, and locates it in the Second Judicial District of Jones County, Mississippi. As pointed out with reference to the case just cited, there was no proof offered as to the situs of the land in any state and county, whereas here, no doubt evidence will be offered to show the district, state and county, on remand, and it will be competent, since "120 acres of land the Old Hatcher Place" furnishes sufficient other means of identification as a basis of clarification of the description, if the the Old Hatcher Place be proven to be where the petition avers it is located.

Appellant further relies on the case of Taylor et al. v. Sayle et al., 163 Miss. 822, 142 So. 3, involving the enforcement of the sale of "real property known as Turkey Creek Place situated in Yalobusha County, Mississippi, and containing approximately 1430 acres of land together with all improvements thereon." A careful reading of the opinion, we think, will demonstrate that it supports the position of appellee here, rather than that of the appellant.

The memorandum of sale was held insufficient where the real property was described as "on the south side of the town of Darling, to be measured later." This holding was of course correct, but the case is not helpful here. At any rate, the lots turned out to be on the east side of Darling. Nickerson v. Fithian Land Co., et al, 118 Miss. 722, 80 So. 1.

We do not deem the case of Kervin v. Biglane, 144 Miss. 666, 110 So. 232, cited by appellant, to be conclusive here, because the Court there was unable to determine whether the memorandum dealt with a sale or a lease,

and there was a variance between the land sought in the original bill and that described in the memorandum. However, it was held that the contract must show in some manner whether it is a contract to sell or not, and also whether a warranty or a quitclaim deed was to be executed. But apparently only an option was at issue there, while here the memorandum specifically provides for a deed. We deal further with this question later herein.

In a case wherein this Court said of the agreement that it was "for a house and lot, without designating the same, *or referring to anything by which they could be ascertained*" (italics supplied), it was declared that "Oral evidence is inadmissible for the purpose of supplying an omission in an instrument where written evidence is required by law." But it was at the same time announced that: "Every agreement which is required by the statute of frauds must be certain in itself, or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable precision, otherwise it cannot be carried into effect." McGuire v. Stevens, 42 Miss. 724, 2 Am. Rep. 649.

In a suit to enforce performance of a contract describing the subject matter as "a piece of property on the corner of Main and Pearl Streets, City of Natchez," relief was denied because "the receipt refers to no extrinsic fact by which it could be ascertained on which corner of Main and Pearl Streets the land in controversy is situated." For that reason, it was held that extrinsic parol evidence was incompetent. Holmes v. Evans and Monahan, 48 Miss. 247, 12 Am. Rep. 372.

Referring to facts de hors the writing, as far back in our jurisprudence as Smedes & M. Ch. 338, at page 342, in the case of Jenkins v. Bodley, the Court held that if the written instrument contained sufficient facts to point out the locality of the lot involved, 'and to supply by inquiry, information as to the exact boundary of the lot, then the description must be held sufficient in equity, to

protect the grantee in the deed against any subsequent purchaser.''

This Court has definitely laid down the general rule in the case of Raines v. Baird, 84 Miss. 807, 37 So. 458, where the property was described simply as ''that tract of land adjoining section Nine, and known as the Phil Allen place, containing eighty acres more or less.'' Specific performance was granted. The opinion quoted from Kyle v. Rhodes, 71 Miss. 487, 491, 15 So. 40: ''It is a general rule that, where parcels of real estate are conveyed by well-known designations, such conveyances are valid, though resort to extrinsic evidence may be necessary to show what was accurately included in the general description employed in the conveyance. In the case at bar the memorandum in writing describes the premises by reference to extraneous facts, and in such instances it is proper to resort to extrinsic evidence to ascertain those facts, in order to show what was embraced in the general designation of the land which was employed by the grantor.''

Compare the ''Phil Allen place containing eighty acres'' with ''Old Hatcher Place,'' containing one hundred and twenty acres. The above is the rule in this State today, based on the maxim, id certum est quod certum reddi potest. It is also the general rule elsewhere. See 18 C. J., Deeds, Secs. 62(2), sufficiency (a) and 63(b), pages 180 and 181, and 26 C. J. S., Deeds, Section 30(g), page 219.

Certain lands were designated as one hundred sixty acres, known as the Vaughn tract, and another as the Price tract, containing two hundred and sixty acres. In dealing with the writing involved, the Supreme Court said: ''If the meaning of the instrument, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony. 2 Parsons on Contracts 564. Where subject of a devise was described by reference to some extrinsic fact, it was not merely competent but necessary to admit extrinsic evidence to

ascertain the fact, and through that medium, to ascertain the subject of devise.'' Tucker v. Field, 51 Miss. 191.

A deed from the State Auditor was not void for uncertainty or deficient description, where the land was described as ''Commencement Plantation, consisting of 1330 acres.'' It was admitted that it contained 1330 acres. Vaughn v. Swayzie, 56 Miss. 704. See also, Dochterman et al. v. Marshall et al., 92 Miss. 747, 46 So. 542; Kyle v. Rhodes, 71 Miss. 487, 15 So. 40.

A mortgage was placed on the land described as mortgagor's one-third interest in a plantation situated in Holmes County known as ''Wanalaw.'' A bill to foreclose was met by a demurrer that the mortgage was void for uncertainty as to the thing conveyed. The Court did not think so, since ''the description refers to extrinsic facts, and it may be shown what plantation in Holmes County is known as 'Wanalaw.' '' Eggleston v. Watson, 53 Miss. 339.

See also Miles v. Miles et al., 78 Miss. 904, 30 So. 2, Dixon v. Cook, 47 Miss. 220, where the omitted township and range was permitted to be supplied by extrinsic evidence, under the circumstances there; Hanna v. Renfro, 32 Miss. 125, where the omitted county and state were permitted to be proven by evidence, aliunde the writing; Foute v. Fairman et al., 48 Miss. 536, proof of township and range permitted, in order to supply omission thereof from the written instrument; Stewart v. Cage, 59 Miss. 558; Connell v. Mulligan, 13 Smedes & M. 388.

In the case of Hanna v. Renfro, supra, we have declared that a tax collector's deed ''which designates the land sold by the proper section, township and range, but omits to designate the county or state in which it is situated, is not void for uncertainty; such omission creates a latent ambiguity which may be explained by parol evidence showing the identity of the land.'' To the same effect are the decisions of this Court in Ladnier v. Ladnier, 75 Miss. 777, 23 So. 430, and Peacher v. Strauss, 47 Miss. 353. In the last case just cited, the Court propound-

ed this question: "Can the absence, from the description of the land of the county and state, as appears on inspection of the deed, be supplied by parol?" After a comprehensive discussion of the proper answer to be given to such judicial query, the Court concluded that: "Upon general principles, as enunciated by modern authorities, and sustained by sound reason, that extrinsic evidence of the county and state, as proposed by the plaintiffs on the trial, ought to have been admitted, in aid of the description of the land mentioned in the deed, and claimed in the suit, in view, apparently, of other means of local identification." In the case at bar, the "other means of local identification" are "120 acres of land the Old Hatcher Place."

The foregoing conclusion by this Court is in line with general authority. The Illinois Court declared that: "A description omitting the town, county, or state where the land is situated may be sufficient if the deed provided other means of identification and particulars of description." Brenneman v. Dillon, 296 Ill. 140, 129 N. E. 564, 567. The same rule is announced in Ruling Case Law, vol. 8, Deeds, Sec 133, page 1077. The Texas Court said: "Appellee makes the point that the deed does not locate the Daniel Tatom preemption 'in any nation, state or county.' This exception does not render the deed void." Brooks v. Temple Lbr. Co., Tex. Civ. App. 105 S. W. (2d) 386, 388. We are supported in our jurisprudence on this subject also by Reed on the Statute of Frauds, Volume 1, Secs. 409—416. See also Browne, Statute of Frauds, Vol. 1, Section 385, page 472. See also Section 90, page 217, Pomeroy's Specific Performance of Contracts; also Waterman on The Law of Specific Performance, Section 237.

We are, therefore, of the opinion that since the memorandum may be made certain by following up the clue to certainty therein given, and that omission of the state and county is a latent defect which may be repaired by extrinsic evidence where, as here, there are other means of local identification, the agreement involved

here is not void for failure to meet the requirements of the statute of frauds, and the chancellor was correct in overruling the general demurrer, on that ground.

This brings us to the next attack upon the availability of this agreement, in a suit for specific performance, in that it does not sufficiently set forth the terms of the contract because it does not expressly provide the type of deed to be executed, whether quitclaim or warranty. The prayer of the original bill is for a warranty deed.

 In approaching this issue, it must be borne in mind that it is, subject to certain infrequent exceptions based on peculiar conditions, the general usage and custom of purchasers to demand and receive warranty deeds, in purchasing real estate, and this custom and usage should be taken into consideration here, in construing this instrument. It does not expressly promise merely a quitclaim deed, and the presumption, therefore, must arise that a warranty deed was intended.

On this subject, the rule appears to be, as it should, in good sense and reason, that "An agreement to sell and convey land is in legal effect an agreement to sell a title to the land, and, in the absence of any provision in the contract indicating the character of the title provide for, the law implies an undertaking on the part of the vendor to make and convey a good or marketable title to the purchaser. A contract to sell and convey real estate ordinarily requires a conveyance of the fee simple free and clear of all liens and encumbrances. There is authority that the right of the vendee under an executory contract to a good title is a right given by law rather than one growing out of the agreement of the parties, and that he may insist on having a good title, not because it is stipulated for by the agreement, but on his general right to require it. In this respect, the terms 'good title,' 'marketable title,' and 'perfect title' are regarded as synonymous and indicative of the same character of title. To constitute such a title the validity of the title must be clear. There can be no reasonable doubt as to any fact or point

of law upon which its validity depends. As is sometimes said, a marketable title must be one which can be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence," 55 Am. Jur. Sec. 149, page 619. See also Feemster v. May, 13 Smedes & M. 275, 53 Am. Dec. 83; Union & Planters Bank & Trs. Co. v. Corley, 161 Miss. 282, 132 So. 78, 133 So. 232, 237, where the Court said: "It is familiar with every person conversant with modern conditions that one valuable thing in owning property is the ability to secure loans of money upon it, on reasonable terms. It is not the mere peaceful possession of property, but such a title as can be readily sold to another who is willing to buy on reasonable terms, or which can be mortgaged to secure loans on reasonable terms from persons having money to lend." This would be accomplished only where the title to be conveyed is in fee simple absolute, save in possibly exceptional situations and conditions not here present or where it is expressly agreed to the contrary. We think the Chancellor was correct in overruling the demurrer on that ground, where the original bill, as here, prayed a warranty deed.

The decree of the lower court will be affirmed and the cause remanded for further proceedings not in conflict with our views herein expressed.

Affirmed and remanded.